IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALEXANDER MERCADO and MONICA ESPAILLAT, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>GNC HOLDINGS, LLC,<br><br>　　　　　　　　　　Defendant. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

　　　　Plaintiffs Alexander Mercado and Monica Espaillat ("Plaintiffs") bring this action on behalf of themselves, and all others similarly situated against Defendant GNC Holdings, LLC ("Defendant"). Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

## NATURE OF THE ACTION

　　　　1.　　This is a putative class action lawsuit on behalf of purchasers of Defendant's Total Lean Lean Bars (collectively, the "Products"). Defendant markets and sells the Products as "lean" to impress upon the public that its products contain less fat than its competitors. However, the Products do not comply with 21 C.F.R. 101.62(e) and therefore do not meet such warranties. Accordingly, Defendant has no basis to label its Products as "lean."

　　　　2.　　Many health-conscious consumers actively seek out lean food products with a high protein content because they believe it will assist with muscle gain or fat loss. Additionally, many consumers avoid food products with high fat content due to health reasons, such as heart disease or high blood pressure. Almost all of Defendant's competitors produce protein Products with the same, if not lower, fat levels.

1

3.  However, contrary to Defendant's representation, the Products do not contain any less fat than similar "non-lean" protein Products on the market. Accordingly, the Products are not lean because they do not contain any less fat than other traditional protein Products.

4.  As such, Defendant engaged in widespread false and deceptive advertising on its Products by claiming the Products are "lean." Every package of the Products prominently features the words "Total Lean" (hereinafter, the "Lean Claims").

5.  Plaintiffs and Class Members purchased Products designed, marketed, manufactured, distributed, and sold by Defendant as "lean." Further, Plaintiffs and Class Members relied to their detriment on Defendant's representation that the Products are "lean" and therefore would contain a low amount of fat. Plaintiffs and Class Members would not have paid to purchase Defendant's Products–or would not have paid as much as they did to purchase them– had they known that they were not, in fact, "lean" and contained significant amounts of fat. Plaintiffs and Class Members thus suffered monetary damages because of Defendant's false and deceptive representations.

## PARTIES

6.  Plaintiff Alexander Mercado is a citizen of New York, residing in Bronx, New York. In October 2022, Plaintiff Mercado purchased Defendant's Total Lean Lean Bar in the Strawberry Yogurt flavor for his personal use from GNC in Manhattan, New York. Prior to his purchase of the Product, Plaintiff Mercado reviewed the Product's labeling and packaging and saw that the Product was a "lean" protein Product. Plaintiff Mercado relied on that labeling and packaging to choose his Product over comparable products. Plaintiff Mercado saw these representations prior to, and at the time of purchase, and understood them as representations and warranties that the Product was "lean" and would therefore contain a low amount of fat. Plaintiff did not realize the side or back panel of the Product contained information inconsistent with this

2

representation. Specifically, the Product contained 12 grams of fat per 100 grams of Product, 2 grams over the statutory limit. Plaintiff Mercado relied on these representations and warranties in deciding to purchase the Product. Accordingly, those representations and warranties were part of the basis of the bargain, in that he would not have purchased the Product on the same terms had he known those representations were not true. However, Plaintiff Mercado remains interested in purchasing Product that are actually "lean" and would consider the Total Lean Products in the future if Defendant ensured the Products actually were lean. In making his purchase, Plaintiff Mercado paid a substantial price premium due to the false and misleading Lean Claims. However, Plaintiff Mercado did not receive the benefit of the bargain because the Product was not, in fact, lean. Plaintiff Mercado further understood that the purchase came with Defendant's representation and warranties that the Products were "lean" and would therefore contain a low amount of fat.

7.     Plaintiff Monica Espaillat is a citizen of New York, residing in Bronx, New York. In October 2022, Plaintiff Espaillat purchased Defendant's Total Lean Lean Bar in the Strawberry Yogurt flavor for her personal use from GNC in Manhattan, New York. Prior to her purchase of the Product, Plaintiff Espaillat reviewed the Product's labeling and packaging and saw that the Product was a "lean" protein Product. Plaintiff Espaillat relied on that labeling and packaging to choose her Product over comparable products. Plaintiff Espaillat saw these representations prior to, and at the time of purchase, and understood them as representations and warranties that the Product was "lean" and would therefore contain a low amount of fat. Plaintiff did not realize the side or back panel of the Product contained information inconsistent with this representation. Specifically, the Product contained 12 grams of fat per 100 grams of Product, 2 grams over the statutory limit. Plaintiff Espaillat relied on these representations and warranties in deciding to purchase the Product. Accordingly, those representations and warranties were part

3

of the basis of the bargain, in that she would not have purchased the Product on the same terms had she known those representations were not true. However, Plaintiff Espaillat remains interested in purchasing Product that are actually "lean" and would consider the Total Lean Products in the future if Defendant ensured the Products actually were lean. In making her purchase, Plaintiff Espaillat paid a substantial price premium due to the false and misleading Lean Claims. However, Plaintiff Espaillat did not receive the benefit of the bargain because the Product was not, in fact, lean. Plaintiff Espaillat further understood that the purchase came with Defendant's representation and warranties that the Products were "lean" and would therefore contain a low amount of fat.

8. Defendant GNC Holdings, LLC, is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business in Pittsburgh, Pennsylvania. Defendant manufactures, sells, and/or distributes health and fitness related products and operates thousands of retail locations in the United States. It is responsible for the advertising, marketing, trade dress, and packaging of Lean Body products. Defendant manufactured, marketed, and sold the Products during the class period.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C § 1332(d)(2)(a) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, there are over 100 members of the putative class, and Plaintiffs, as well as most members of the proposed class, are citizens of states different from Defendant.

10. This Court has personal jurisdiction over Defendant because Defendant conducts substantial business within New York, such that Defendant has significant, continuous, and

pervasive contacts with the State of New York.  Furthermore, a substantial portion of the events giving rise to Plaintiffs' claims occurred in this State, including Plaintiffs' purchase.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant does substantial business in this District and a substantial part of the events giving rise to Plaintiffs' claims took place within this District.

## FACTUAL ALLEGATIONS

### A. Lean Foods

12. Federal regulations specifically prohibit the use of the word "lean" unless Defendant uses such term in accordance with its definition as set out in 21 C.F.R. § 101.62(e). *See* 21 C.F.R. § 101.62(a). 21 C.F.R. § 101.62(e) specifies that [t]he term "lean" may be used on the label or in labeling of a product, "provided that the product contains less than 10 g of fat, 4.5 g or less of saturated fat, and less than 95 mg of cholesterol per 100 g of product and per reference amount customarily consumed for individual foods."

13. Use of the term "lean" in a way that does not with comply with 21 C.F.R. § 101.62(e) "shall be deemed to be misbrand[ing] under sections 201(n), 403(a), and 403(r) of the Federal Food, Drug, and Cosmetic Act." 21 C.F.R. § 101.62(a), (f). Defendant's use of the word "lean" in the names of each Total Lean Product does not meet the definitional requirements of 21 C.F.R. § 101.62(e) and thus is a per se violation of the Food, Drug, and Cosmetic Act and independently actionable under parallel state consumer protection laws.

**B.      Defendant's Misrepresentations Regarding the Products**

14.    GNC Holdings, LLC, sells, manufactures, and markets its Products, which are sold as "lean" Products. On the front of the Products' packaging, the Products are touted as being "lean:"



15.    However, Defendant's Lean Body Products do not meet the definitional requirements of 21 C.F.R. § 101.62(e):

| Product | Fat Content | Saturated Fat Content |
|---|---|---|
| GNC Total Lean Layered Lean Bar: Whipped Chocolate Mousse | 22.72g/100g | 15.9g/100g |
| GNC Total Lean Layered Lean Bar: Peanut Butter Pie | 18.18g/100g | 9.09g/100g |
| GNC Total Lean Layered Lean Bar: Girl Scout Coconut Caramel | 18.18g/100g | 9.09g/100g |
| GNC Total Lean Layered Bar: Girl Scout Lemon | 18.18g/100g | 11.36g/100g |
| GNC Total Lean Lean Bar: Chocolate Peanut Butter | 12.5g/100g | 2g/44g |
| GNC Total Lean Lean Bar: Blueberry Yogurt | 12g/100g | 2g/50g |
| GNC Total Lean Lean Bar: Chocolate Chip | 12.5g/100g | 2g/48g |

6

| | | |
|---|---|---|
| GNC Total Lean Lean Bar: Lemon Meringue | 12.5g/100g | 2g/48g |
| GNC Total LeanLean Bar: White Chocolate Crunch | 14g/100g | 2g/50g |
| GNC Total Lean Lean Bar: Vanilla Birthday Cake | 12g/100g | 2g/50g |
| GNC Total Lean Layered Lean Bar: Girl Scout Thin Mints | 18.18g/100g | 9.09g/100g |
| GNC Total Lean Lean Bar: Strawberry Yogurt | 12g/100g | 2g/50g |
| GNC Total Lean Lean Bar: Fruity Crisp | 12g/100g | 2g/50g |

16. Defendant's use of the word "lean" to describe its Products is particularly misleading because these Products do not contain any less fat than similar "non-lean" protein Products on the market. Almost all of Defendant's competitors produce protein products with the same, if not lower, fat levels. Accordingly, the Total Lean Products are not lean because they do not contain any less fat than other traditional protein Products.

17. Defendant's advertising and marketing of the Products is false and misleading and omits material information. Defendant prominently advertises on the front label that the Products are "lean." Consumers reasonably expect that Products will, in fact, be lean and therefore would contain a low amount of fat. Nowhere on the Products' packaging does Defendant inform consumers that the Products are not lean. Defendant's misrepresentations and/or omissions violate consumers' reasonable expectations and as alleged herein, New York's consumer protection statutes.

18. Defendant knew or should have known that the Products' express Lean Claims were false, deceptive, and misleading, and that Plaintiffs, the Class, and Subclass Members would not be able to tell that the Products were not lean absent Defendant's express disclosure.

7

19. Defendant employs nutritionists to create the formulations for the Products. Therefore, Defendant, through its employees, knew or should have known that the Products' fat content was not "lean" and that it was deceiving consumers by labeling the Products as "lean."

20. On information and belief, Defendant, through its employees, did know that the Products were not lean, but chose to include the Lean Claims because they did not believe their customers would know the difference.

21. Had Defendant not made the false, misleading, and deceptive representations and/or omissions alleged herein, Plaintiffs and Class Members would not have purchased the Products or would not have paid as much as they did for such Products. Thus, Plaintiffs and Class Members suffered an injury in fact and lost money or property as result of Defendant's wrongful conduct.

## **CLASS ALLEGATIONS**

22. Plaintiffs hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

23. Plaintiffs seeks to represent a class defined as all people in the United States who purchased any Total Lean product that falsely advertised that the Products' purported fat content during the applicable statute of limitations (the "Class"). Specifically excluded from the Class are Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or Defendant's officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

24. Plaintiffs also seek to represent a subclass consisting of Class Members who reside in New York (the "New York Subclass").

25. Subject to additional information obtained through further investigation and discovery, the foregoing definitions of the Class and Subclass may be expanded or narrowed by amendment or amended complaint.

26. **Numerosity.** The Class and Subclass Members are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable. Upon information and belief, Plaintiffs reasonably estimates that there are hundreds of thousands of Members in the Class and in the Subclass. Although the precise number of Class and Subclass Members is unknown to Plaintiffs, it is known by Defendant and may be determined through discovery.

27. **Existence and predominance of common questions of law and fact.** Common questions of law and fact exist as to all Members of the Class and Subclass and predominate over any questions affecting only individual Class or Subclass members. These common legal and factual questions include, but are not limited to, the following:

(a) Whether Defendant made false and/or misleading statements to the consuming public concerning the fat content of the Products;

(b) Whether Defendant omitted material information to the consuming public concerning the fat content of the Products;

(c) Whether Defendant's labeling and packaging for the Products is misleading and/or deceptive;

(d) Whether Defendant engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising and sale of the Products;

(e) Whether Defendant's representations concerning the Products were likely to deceive a reasonable consumer;

(f) Whether Defendant's omissions concerning the Products were likely to deceive a reasonable consumer;

(g) Whether Defendant represented to consumers that the Products have characteristics, benefits, or qualities that they do not have;

(h) Whether Defendant advertised the Products with the intent to sell them not as advertised;

(i) Whether Defendant falsely advertised the Products;

(j) Whether Defendant made and breached express and/or implied warranties to Plaintiffs and Class and Subclass Members about the Products;

(k) Whether Defendant's representations, omissions, and/or breaches caused injury to Plaintiffs and Class and Subclass Members; and

(l) Whether Plaintiffs and Class and Subclass Members are entitled to damages.

28. **Typicality.** Plaintiffs' claims are typical of the claims of the other Members of the Class and Subclass in that, among other things, all Class and Subclass Members were deceived (or reasonably likely to be deceived) in the same way by Defendant's false and misleading advertising claims about the fat content of the Products. All Class and Subclass Members were comparably injured by Defendant's wrongful conduct as set forth herein. Further, there are no defenses available to Defendant that are unique to Plaintiffs.

29. **Adequacy of Representation.** Plaintiffs will fairly and adequately protect the interests of the Members of the Class and Subclass. Plaintiffs have retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiffs intends to vigorously prosecute this action on behalf of the Class and Subclass. Furthermore, Plaintiffs have no interests that are antagonistic to those of the Class or Subclass.

30. **Superiority.** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class and Subclass Members are relatively small compared to the burden and expense of individual litigation of their claims against Defendant. It would, thus, be virtually impossible for Class or Subclass Members to obtain effective redress on an individual basis for the wrongs committed against them. Even if Class or Subclass Members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. It would also increase the delay and expense to all parties and the court system from the issues raised by this action. The class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

31. In the alternative, the Class and Subclass may also be certified because:

(a) the prosecution of separate actions by individual Class and Subclass Members would create a risk of inconsistent or varying adjudications with respect to individual Class or Subclass Members that would establish incompatible standards of conduct for Defendant;

(b) the prosecution of separate actions by individual Class and Subclass Members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class and Subclass Members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c)     Defendant has acted or refused to act on grounds generally applicable to the Class and to the Subclass as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the Members of the Class and to the Members of the Subclass as a whole.

**COUNT I**
**Violation Of New York's Gen. Bus. Law § 349**
**(On Behalf of The New York Subclass)**

32.     Plaintiffs hereby incorporate by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

33.     Plaintiffs Alexander Mercado and Monica Espaillat bring this claim individually and on behalf of the Members of the proposed New York Subclass against Defendant.

34.     Defendant committed deceptive acts and practices by employing false, misleading, and deceptive representations and/or omissions about the fat content of its Products to mislead consumers into believing the Products were "lean" and would therefore contain a low amount of fat.

35.     Plaintiffs have standing to pursue this claim because they have suffered an injury-in-fact and have lost money or property as a result of Defendant's deceptive acts and practices. Specifically, Plaintiffs purchased Products for their own personal use. In doing so, Plaintiffs relied upon Defendant's false, misleading, and deceptive representations that the Products were lean. Plaintiffs spent money in the transaction that they otherwise would not have spent had they known the truth about Defendant's advertising claims.

36.     Defendant's deceptive acts and practices were directed at consumers.

37.     Defendant's deceptive acts and practices are misleading in a material way because they violate consumers' reasonable expectations. Defendant knew consumers would purchase the Products and/or pay more for them under the false—but reasonable—belief that the Products

12

were lean when they were not. By advertising prominently that the Products were lean, Defendant proves that information about their fat content is material to consumers. If such information were not material, Defendant would not feature it prominently on the front label of every Product's package. As a result of its deceptive acts and practices, Defendant has sold thousands, if not millions, of Products to unsuspecting consumers across New York. If Defendant had advertised its Products truthfully and in a non-misleading fashion, Plaintiffs and other New York Subclass Members would not have purchased them or would not have paid as much as they did for them.

38. As a direct and proximate result of Defendant's false, misleading, and deceptive representations and/or omissions, Plaintiffs Mercado and Espaillat and other Members of the New York Subclass were injured in that they: (1) paid money for Products that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the Products they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Products they purchased had less value than if Defendant's representations about the Products' fat content were truthful.

39. On behalf of themselves and Members of the New York Subclass, Plaintiffs Mercado and Espaillat seek to enjoin Defendant's unlawful acts and practices and recover their actual damages or fifty (50) dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT II
### Violation Of New York's Gen. Bus. Law § 350
### (On Behalf of The New York Subclass)

40. Plaintiffs hereby incorporate by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

41. Plaintiffs Alexander Mercado and Monica Espaillat bring this claim individually and on behalf of the Members of the proposed New York Subclass against Defendant.

42. Defendant engaged in a campaign of false advertising regarding the fat content of the Products to mislead consumers into believing the Products they purchase are "lean" and would therefore contain a low amount of fat.

43. Plaintiffs have standing to pursue this claim because they have suffered an injury-in-fact and have lost money or property because of Defendant's deceptive acts and practices. Specifically, Plaintiffs purchased Products for their own personal use. In doing so, Plaintiffs relied upon Defendant's false, misleading, and deceptive representations that the Products would be lean when they are not. Plaintiffs spent money in the transaction that they otherwise would not have spent had they known the truth about Defendant's advertising claims.

44. Defendant's deceptive acts and practices were directed at consumers.

45. Defendant's deceptive acts and practices are misleading in a material way because, as alleged above and herein, they violate consumers' reasonable expectations. If Defendant had advertised its Products truthfully and in a non-misleading fashion, Plaintiffs and other New York Subclass Members would not have purchased the Products or would not have paid as much as they did for them.

46. As a direct and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Plaintiffs Mercado and Espaillat and other Members of the New York Subclass were injured in that they: (1) paid money for Products that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the Products they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Products they purchased had less value than if Defendant's representations about the Products' fat content were truthful.

47. On behalf of themselves and Members of the New York Subclass, Plaintiffs Mercado and Espaillat seek to enjoin Defendant's unlawful acts and practices and recover their actual damages or five hundred (500) dollars per violation, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT III
### Breach Of Express Warranty
### (On Behalf of The Class and The New York Subclass)

48. Plaintiffs hereby incorporate by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

49. Plaintiffs Alexander Mercado and Monica Espaillat bring this claim individually and on behalf of the Members of the proposed Class and Subclass against Defendant.

50. As the designer, manufacturer, marketer, distributor, and/or seller of the Products, Defendant issued an express warranty by representing to consumers at the point of purchase that the Products were lean. Defendant's representations were part of the description of the goods and the bargain upon which the goods were offered for sale and purchased by Plaintiffs and Members of the Class and Subclass.

51. In fact, the Products do not conform to Defendant's representations that the Products are "lean" because the Products are not, in fact, "lean." By falsely representing the Products in this way, Defendant breached express warranties.

52. On January 31, 2023, prior to the filing of this Complaint, Plaintiffs' counsel sent Defendant a warranty notice letter that complied in all respects with U.C.C. 2-607. The letter provided notice of breach of express and implied warranties. The letter was sent via certified mail, return receipt requested, advising Defendant that it was in violation of the U.C.C. 2-607 and state consumer protection laws and demanding that it cease and desist from such violations

and make full restitution by refunding the monies received therefrom. The letter stated that it was sent on behalf of Plaintiffs and all other similarly situated purchasers.

53. As a direct and proximate result of Defendant's breach, Plaintiffs and Members of the Class and Subclass were injured because they: (1) paid money for Products that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the Products they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Products they purchased had less value than if Defendant's representations about the Products' fat content were truthful. Had Defendant not breached the express warranty by making the false representations alleged herein, Plaintiffs and Class and Subclass Members would not have purchased the Products, nor would they have paid as much as they did for them.

## COUNT IV
### Breach of Implied Warranty
### (On Behalf of The Class and The New York Subclass)

54. Plaintiffs hereby incorporate by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

55. Plaintiffs Mercado and Espaillat bring this claim individually and on behalf of the Members of the proposed Class and Subclass against Defendant.

56. Defendant routinely engages in the manufacture, distribution, and/or sale of Products and is a merchant that deals in such goods or otherwise holds itself out as having knowledge or skill particular to the practices and goods involved.

57. Plaintiffs and Members of the Class and Subclass were consumers who purchased Defendant's Products for the ordinary purpose of such Products.

58. By representing that the Products were lean, Defendant impliedly warranted to consumers that the Products were merchantable, such that they were of the same average grade, quality, and value as similar goods sold under similar circumstances.

59. However, the Products were not of the same average grade, quality, and value as similar goods sold under similar circumstances. Thus, they were not merchantable and, as such, would not pass without objection in the trade or industry under the contract description.

60. As a direct and proximate result of Defendant's breach, Plaintiffs and Members of the Class and Subclass were injured because they paid money for Products that would not pass without objection in the trade or industry under the contract description.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, seek judgment against Defendant as follows:

a. Certifying the nationwide Class and the New York Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Subclass and Plaintiffs' attorneys as Class Counsel to represent the Class and Subclass Members;

b. Declaring that Defendant's conduct violates the statutes referenced herein;

c. Finding in favor of Plaintiffs, the nationwide Class and the New York Subclass against Defendant on all counts asserted herein;

d. For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e. Ordering Defendant to disgorge and make restitution of all monies Defendant acquired by means of the unlawful practices as set forth herein;

f.  Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervision, victims of its conduct and pay them all the money they are required to pay;

g.  Awarding Plaintiffs and Class and Subclass Members their costs and expenses incurred in the action, including reasonable attorneys' fees;

h.  Ordering Defendant to pay pre-judgment interest on all amounts awarded; and

i.  Providing such further relief as may be just and proper.

## JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demands a trial by jury of any and all issues in this action so triable of right.

Dated: February 24, 2023

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:    */s/ Frederick J. Klorczyk III*
         *Frederick J. Klorczyk III*

Frederick J. Klorczyk III
888 Seventh Avenue
New York, NY  10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
Email: fklorczyk@bursor.com

**BURSOR & FISHER, P.A.**
Brittany S. Scott (*pro hac vice* forthcoming)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone:  (925) 300-4455
Facsimile:  (925) 407-2700
Email:  bscott@bursor.com

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
Nick Suciu III (*pro hac vice* forthcoming)
6905 Telegraph Rd., Suite 115

Bloomfield Hills, MI 48301
Telephone: (313) 303-3472
E-Mail: nicksuciu@milberg.com

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
Gary M. Klinger
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Phone: 866.252.0878
Email: gklinger@milberg.com

*Attorneys for Plaintiffs*