## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ALEXANDER MERCADO and MONICA ESPAILLAT, individually and on behalf of all others similarly situated, | ) ) ) ) | 1:23-cv-01572-JSR |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| GNC HOLDINGS, LLC, | ) ) | |
| Defendant. | ) ) | |

## <u>DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS</u>

AMIN TALATI WASSERMAN, LLP
William P. Cole (pro hac vice)
Matthew R. Orr (pro hac vice)
515 South Flower Street, 18th Floor
Los Angeles, CA 90071
Telephone: (213) 933-2330
Facsimile: (312) 884-7352

*Attorneys for Defendant GNC Holdings, LLC*

## <u>TABLE OF CONTENTS</u>

I.   PRELIMINARY STATEMENT ................................................................................ 1

II.  PLAINTIFFS' ALLEGATIONS ............................................................................. 2

III. PLEADING STANDARDS..................................................................................... 5

IV.  ARGUMENT ........................................................................................................... 7

   A.  Plaintiffs Do Not Plead Facts Establishing Article III Standing to Pursue Injunctive Relief.
       ............................................................................................................................... 7

   B.  The GBL Claims Fail Because Plaintiffs Do Not Allege Facts Plausibly Establishing the
       Product Label is False or Misleading to Reasonable Consumers. ...................... 8

   C.  The Breach of Express Warranty Claim Fails for the Same Reasons as the GBL Claims. 12

   D.  The Breach of Implied Warranty Claim Fails as a Matter of Law. ................... 13

   E.  The Court Does Not Have Personal Jurisdiction Over GNC with Respect to Claims of
       Out-of-State Putative Class Members.............................................................. 14

V.   CONCLUSION ..................................................................................................... 19

## **TABLE OF AUTHORITIES**

### **State Cases**

*Bristol-Myers Squibb v. Superior Court*, 137 S. Ct. 1773 (2017). ............................ 15, 16, 17, 18

### **Federal Cases**

*Amidax Trading Group v. S.W.I.F.T. SCRL*, 671 F.3d 140 (2d Cir. 2011).................................... 6

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................... 6

*Barreto v. Westbrae Natural, Inc.*, 518 F. Supp. 3d 795 (S.D.N.Y. 2021)............................ 13, 14

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................ 6

*Berni v. Barilla S.p.A.*, 964 F.3d 141 (2d Cir. 2020) ................................................... 7, 8

*Boger v. Citrix Systems, Inc.*, No. 8:19-cv-01234-PX, 2020 WL 1033566

   (D. Md. Mar. 3, 2020). ............................................................................... 15

*Boswell v. Bimbo Bakeries USA, Inc.*, 570 F. Supp. 3d 89 (S.D.N.Y. 2021) ..................... 9, 10, 11

*Broder v. MBNA Corp.*, 281 A.D.2d 369, 722 N.Y.S.2d 524 (1st Dep't 2011) ............................ 9

*Brumfield v. Trader Joe's Co.*, 17 Civ. 3239 (LGS), 2018 WL 4168956

   (S.D.N.Y. Aug. 30, 2018) ............................................................................... 13

*Budhani v. Monster Energy Co.*, 527 F. Supp. 3d 667 (S.D.N.Y. 2021)........................................ 9

*Bynum v. Family Dollar Stores, Inc.*, 592 F. Supp. 3d 304 (S.D.N.Y. 2022)........... 8, 9, 10, 11, 12

*Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417 (2d Cir. 2013) ................................................ 13

*Carpenter v. PetSmart, Inc.*, 441 F. Supp. 3d 1028 (S.D. Cal. 2020).................................... 15, 17

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,

   433 F.3d 181 (2d Cir. 2005)............................................................................... 7

*Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68 (2d Cir. 2018).................................... 7

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ........................................................................ 7

*Cosgrove v. Blue Diamond Growers,* No. 19 Civ. 8993, 2020 WL 7211218

   (S.D.N.Y. Dec. 7, 2020) ................................................................................ 13

*Dashnau v. Unilever Manufacturing (US), Inc.*, 529 F.Supp.3d 235 (S.D.N.Y. 2021).... 10, 12, 13

*Fink v. Time Warner Cable*, 714 F.3d 739 (2d Cir. 2013) ............................................. 9

*Freeman v. Time, Inc.*, 68 F.3d 285 (9th Cir. 1995) ................................................. 9, 10

*Garadi v. Mars Wrigley Confectionary U.S., LLC*, No. 1:19-cv-03209 (RJD), 2021 WL 2843137

   (E.D.N.Y. July 6, 2021) ................................................................................ 13

*Gordon v. Target Corp.*, No. 20-CV-9589 (KMK), 2022 WL 836773

   (S.D.N.Y. Mar. 18, 2022) .......................................................................... 6, 8

*Goshen v. Mut. Life Ins. Co. of New York*, 98 N.Y.2d 314, 774 N.E.2d 1190, 746 N.Y.S.2d 858

   (N.Y. 2002) ................................................................................................. 9

*Howze v. Mondelez Global LLC*, No. 22-CV-351 (JLS), 2023 WL 122307 (W.D.N.Y. 2023)... 13

*Hu v. City of New York*, 927 F.3d 81 (2d Cir. 2019). ................................................... 6

*Kennedy v. Mondelez Global LLC*, No. 19-cv-302-ENV-SJB, 2020 WL 4006197

   (E.D.N.Y. Jul. 10, 2020) ............................................................................... 8

*Leonard v. Mondelez Global LLC*, No. 21-cv-10102-PAC, 2023 WL 2403259

   (S.D.N.Y. Mar. 8, 2023) ............................................................................... 13

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161 (2d Cir. 2013). .................... 14

*Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226 (S.D.N.Y. 2020) ....................... 9

*Mantikas v. Kellogg Company*, 910 F.3d 633 (2d Cir. 2018) ........................................ 9

*McNair v. Synapse Group, Inc.*, 672 F.3d 213 (3d Cir. 2012) ...................................... 7

*Melendez v. ONE BRANDS, LLC*, No. 18-CV-06650 (CBA), 2020 WL 1283793

   (E.D.N.Y. Mar. 16, 2020) ........................................................................ 1, 11

*Molock v. Whole Foods Market Group, Inc.*, 952 F.3d 293 (D.C. Cir. 2020) ........................ 16, 18

*Mussat v. IQVIA, Inc.*, 953 F.3d 441 (7th Cir. 2020); .............................................. 15

*Nicosia v. Amazon.com, Inc.*, 834 F.3d 220 (2d Cir. 2016) ............................................ 7

*North American Olive Oil Ass'n v. Kangadis Food Inc.*, 962 F. Supp. 2d 514 (S.D.N.Y. 2013)  12

*Orlander v. Staples, Inc.*, 802 F.3d 289 (2d Cir. 2015) ............................................... 8

*Pichardo v. Only What You Need, Inc.*, No. 20-CV493 (VEC), 2020 WL 6323775

(S.D.N.Y. Oct. 27, 2020) .................................................................... 12

*Randolph v. Mondelēz Global LLC*, No. 21-cv-10858, 2022 WL 953301

(S.D.N.Y. Mar. 30, 2022) ..................................................................... 6

*Renne v. Nextera Energy, Inc.*, No. 5:21-cv-04032-HLT-ADM, 2022 WL 2918123

(D. Kan. July 25, 2022) ..................................................................... 17

*Ross v. Bank of America, N.A.,* 524 F.3d 217 (2d Cir. 2008) ........................................ 7

*Silva v. Smucker Natural Foods, Inc.*, No. 14-CV-6154 (JG), 2015 WL 5360022

(E.D.N.Y. Sep. 14, 2015) .................................................................... 13

*Smith v. Apple, Inc.*, 583 F. Supp. 3d 554 (S.D.N.Y. 2022) ......................................... 14

*Stacker v. Intellisource, LLC*, No. 20-2581-JWB, 2021 WL 2646444

(D. Kan. June 28, 2021) .................................................................. 15, 16

*Steele v. Wegmans Food Markets, Inc.*, 472 F.Supp.3d 47 (S.D.N.Y. 2020) ........................... 11

*Suarez v. California Natural Living, Inc.*, 17 CV 9847 (VB), 2019 WL 1046662

(S.D.N.Y. Mar. 5, 2019) ...................................................................... 8

*Tears v. Boston Scientific Corp.*, 344 F. Supp. 3d 500 (S.D.N.Y. 2018) ............................. 13

*U.S. Bank Nat'l Assoc. v. Bank of Am. N.A.*, 916 F.3d 143 (2d Cir. 2019) ....................... 14, 18

*Valcarcel v. Ahold U.S.A., Inc.*, 577 F. Supp. 3d 268 (S.D.N.Y. 2021) .............................. 8, 9

*Walden v. Fiore*, 571 U.S. 277 (2014) .................................................................................. 18

*Warren v. Whole Foods Mkt. Grp., Inc.*, No. 19CV6448, 2021 WL 5759702

(E.D.N.Y. Dec. 3, 2021) ................................................................................................ 11

**Statutes**

21 C.F.R. § 101.13 ...................................................................................................... 4, 5

21 C.F.R. § 101.62 ...................................................................................................... 4, 11

Federal Rules of Civil Procedure 8 .................................................................................. 5

Federal Rules of Civil Procedure  12 .......................................................................... 5, 6

New York General Business Law § 349 ........................................................................ 5, 8

New York General Business Law § 350 ........................................................................ 5, 8

## I.      PRELIMINARY STATEMENT

This case is about one of GNC's high-protein nutrition bars—the "Lean Bar" (the "Product"). The Product is part of the GNC Total Lean® plan, which, as stated on the product's packaging, is a "simple plan for living leaner" that includes a meal and exercise plan, energy and metabolism support, cleansing and detox, vitamins, and on-the-go snacks. Plaintiffs do not allege that the GNC Total Lean® plan does not work or that the Product isn't part of that plan for *living* leaner. Instead, their theory is that GNC's use of the word "Lean" in the Product's name would lead reasonable consumers to believe that each bar contains less than 10 g of total fat per 100 g. Because the bars Plaintiffs purchased contained 12 g of total fat per 100 g, they claim the phrase "Lean Bar" is false and misleading.

Plaintiffs, however, are pounding a square peg. They draw their "less than 10 g per 100 g" definition of "lean" from an FDA regulation that applies to *seafood* and *game meat*, not the Product. And not only do they rely on an inapposite regulatory definition of "lean," they allege no facts plausibly establishing that reasonable consumers even know that definition, let alone that they incorporate it into their day-to-day marketplace expectations. Also, the amount of total fat contained in the Product is plainly disclosed in the Product's Nutrition Facts panel—"exactly the spot consumers are trained to look." *Melendez v. ONE Brands, LLC*, No. 18-CV-06650 (CBA), 2020 WL 1283793, *7 (E.D.N.Y. Mar. 16, 2020). Because Plaintiffs have failed to allege facts plausibly establishing the Product's packaging is false or misleading, each of their claims fails as a matter of law.

The Complaint also suffers from other defects:

- Plaintiffs lack Article III standing to pursue injunctive relief.

- The breach of implied warranty claim fails because Plaintiffs do not allege the

Product is unfit for human consumption.

- The Court lacks personal jurisdiction over GNC with respect to the claims of out-of-state putative class members. Those claims do not arise from any contact between GNC and New York.

For all these reasons, the Complaint fails as a matter of law.

## II.   PLAINTIFFS' ALLEGATIONS

GNC markets and sells a high-protein nutrition bar named the "Lean Bar" (the Product). (Compl., Dkt. 1, ¶¶ 1, 14; Decl. of Leslie Butera ("Butera Decl."), Ex. 1.) Plaintiffs Alexander Mercado and Monica Espaillat allege that, in October 2022, they each purchased the Strawberry Yogurt Lean Bars from GNC in Manhattan. (*Id.* ¶¶ 6-7.) They do not claim to have purchased any other variety. Here is the front of the Strawberry Yogurt product packaging:



(Butera Decl., Ex. 1; Dkt. 1, ¶ 14.)

The Product is part of the GNC Total Lean® plan, which, as stated on the Product's packaging, is a "simple plan for living leaner" that includes meal replacements, a meal and exercise plan, energy and metabolism support, cleansing and detox, vitamins and on-the-go snacks:



(Butera Decl., Ex. 1.) As expressly stated in the large Nutrition Facts panel, a Strawberry Yogurt bar weighs 50 g and contains 6 g total fat, 2 g saturated fat, 0 mg cholesterol, and 15 g protein. (*Id.*) Plaintiffs do not challenge the accuracy of any of that expressly disclosed information.

Instead, Plaintiffs allege that the front-label use of the word "Lean" in Lean Bar would mislead consumers to believe the Product "contain[s] a low amount of fat" and "less fat than its

competitors." (Dkt. 1, ¶¶ 1, 5.) But the packaging never uses the phrase "low fat" and never makes any reference to competitors or any competing product. And, as noted, the fat content is stated in the Nutrition Facts panel, exactly where consumers are accustomed to finding it.

In the context of the packaging, "Lean" is a reference to a *lifestyle* – the GNC Total Lean® plan and "*living* leaner"– of which the bars can be part, not a claim about the bars' fat content. (Butera Decl., Ex. 1, emphasis added.) In any event, the Complaint does not allege any facts establishing that consumers have any particular or common understanding or expectation as to what would qualify as "lean" in the context of a high-protein nutrition bar such as the Product. Instead, Plaintiffs merely allege that use of the word "lean" on the bars they purchased "does not meet the definitional requirements of 21 C.F.R. § 101.62(e)" because the bars "contained 12 grams of fat per 100 grams of Product, 2 grams over the statutory limit." (Dkt. 1, ¶¶ 6, 13.)

By "2 grams over the statutory limit," Plaintiffs are referring to 21 C.F.R. § 101.62(e)(1) and (3). Those FDA regulations state that if "lean" is used as a nutrient content claim concerning fat on the labeling of seafood, game meat, "meal products," or "main dish" products, then the product must contain "less than 10 g total fat, 4.5 g or less saturated fat, and less than 95 mg cholesterol per reference amount customarily consumed and per 100 g[.]" *Id.* § 101.62(a)(1), (e)(1), (3). The Strawberry Yogurt bar that Plaintiffs allegedly purchased weighs 50 g and contains 6 g fat, so Plaintiffs allege the bar contains 12 g of total fat per 100 g, which they describe as "2 grams over the statutory limit." (Doc. 1, ¶ 6.) But Plaintiffs do not allege the Product is a seafood or game meat product. Of course, it is not. The Product also is not a "meal product" or "main dish" product, as defined by the regulations. Section 101.62(e)(3) states that a "meal product" is defined by 21 C.F.R. § 101.13(l) and a "main dish product" is defined by 21 C.F.R. § 101.13(m). Section 101.13(l) defines a "meal product" as a food that "[m]akes a major contribution to the total diet by

. . . [w]eighing at least 10 ounces (oz) per labeled serving" and "[c]ontaining not less than three 40-g portions of food, or combination of foods, from two or more of the . . . four food groups." 21 C.F.R. § 101.13(l). Section 101.13(m) defines a "main dish product" as a food that "[m]akes a major contribution to a meal by . . . [w]eighing at least 6 oz per labeled serving" and "[c]ontaining not less than 40 g of food, or combinations of food, from each of at least two of the . . . four food groups." 21 C.F.R. § 101.13(m). The Product obviously is not a "meal product" or "main dish product" because (among other things) it does not weigh anywhere even close to 10 ounces or 6 ounces. The Product that Plaintiffs allegedly purchased weighs only 50 grams per bar (the labeled serving), and 50 grams is only 1.76 ounces.

Thus, the Complaint's allegation that the Product the Plaintiffs purchased is not "lean" because it contains "12 grams of fat per 100 grams of Product" is based on a regulatory standard that does not even apply to the Product. Furthermore, the Complaint does not contain any allegation that Plaintiffs (or consumers generally) were even aware of the complex regulations set forth in 21 C.F.R. 101.62(e)(1) and (3), much less that they incorporate the regulations into their day-to-day marketplace expectations.

Nonetheless, Plaintiffs attempt to allege the following claims: (1) violation of New York General Business Law ("GBL") § 349; (2) violation of GBL § 350; (3) breach of express warranty; and (4) breach of implied warranty. They assert the GBL claims on behalf of a putative class of New York purchasers. (Doc. 1, pg. 12, 13.) They assert the warranty claims on behalf of a proposed nationwide class (or, alternatively, the New York subclass). (*Id.* pg. 15, 16.)

## III.   PLEADING STANDARDS

On a Rule 12(b)(6) motion, the court must dismiss a claim if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12. Rule 8 of the Federal Rules of Civil Procedure

demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted). The complaint must state sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility only if the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678.

The court does not accept as true "legal conclusions," "labels and conclusions" or a "formulaic recitation of the elements of a cause of action[.]" *Iqbal*, 556 U.S. at 678. A "naked assertion" devoid of "further factual enhancement" does not suffice. *Id.* (citation omitted). Additionally, evaluating whether a plaintiff's claim is sufficiently plausible to survive a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

When ruling on a Rule 12(b)(6) motion, the Court may consider not only the complaint in its entirety, but also "documents incorporated into the complaint by reference." *Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019). In food labeling cases, this routinely includes full images of the product labels the plaintiff challenges in the complaint. *See, e.g., Randolph v. Mondelēz Global LLC*, No. 21-cv-10858, 2022 WL 953301, *1 n.1 (S.D.N.Y. Mar. 30, 2022); *Gordon v. Target Corp.*, No. 20-CV-9589 (KMK), 2022 WL 836773, *2 (S.D.N.Y. Mar. 18, 2022).

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A facial attack on subject matter jurisdiction challenges the allegations of the complaint. To survive a Rule 12(b)(1) challenge, the complaint must allege facts that affirmatively and plausibly suggest that it has standing to sue. *Amidax Trading Group v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011). Finally, on a Rule 12(b)(2) motion to dismiss

for lack of personal jurisdiction, the plaintiff bears the burden of making a prima facie showing that jurisdiction exists. *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 81 (2d Cir. 2018).

## IV.   ARGUMENT

### A. Plaintiffs Do Not Plead Facts Establishing Article III Standing to Pursue Injunctive Relief.

As standing is a "threshold question," GNC addresses it first. *Ross v. Bank of America, N.A.,* 524 F.3d 217, 222 (2d Cir. 2008). The Court should dismiss Plaintiffs' claims for injunctive relief because they do not have Article III standing to pursue them. To seek injunctive relief, the plaintiff must show that he or she is likely to suffer future injury from the defendant's conduct. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983). In the class action context, that requirement must be satisfied by the named plaintiff. *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 199 (2d Cir. 2005); *McNair v. Synapse Group, Inc.*, 672 F.3d 213, 223 (3d Cir. 2012). "The prospective-orientation of the analysis is critical: to maintain an action for injunctive relief, a plaintiff 'cannot rely on past injury . . . but must show a likelihood that he . . . will be injured in the future.'" *Berni v. Barilla S.p.A.*, 964 F.3d 141, 147 (2d Cir. 2020) (citation omitted); *accord Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016).

The Second Circuit has held that "past purchasers of a consumer product who claim to be deceived by that product's packaging . . . have, at most, alleged a past harm." *Berni*, 964 F.3d 147. They "are not likely" to encounter "future harm of the kind that makes injunctive relief appropriate." *Id.* The court explained that "[i]n the first place, past purchasers are not bound to purchase a product again—meaning that once they become aware they have been deceived, that

will often be the last time they will buy that item." *Berni*, 964 F.3d at 147. "But even if they do purchase it again, there is no reason to believe that [past purchasers] will incur a harm anew," since "they will not again be under the illusion that" the product meets the standard they alleged was represented. *Id.* at 148. Rather, "next time they buy one of the [products], they will be doing so with exactly the same level of information they claim they were owed from the beginning." *Id.*

Courts in this Circuit routinely dismiss claims for injunctive relief in false advertising cases where, as here, the plaintiffs are now aware of the alleged misrepresentation that they challenge. *See, e.g., Gordon,* 2022 WL 836773, *9 n.3 ("It should now be abundantly clear to Plaintiff's counsel that the Second Circuit has squarely foreclosed the possibility of injunctive relief for past purchasers and thus, that a claim for injunctive relief on behalf of a past purchaser is plainly frivolous."); *Valcarcel v. Ahold U.S.A., Inc.*, 577 F. Supp. 3d 268, (S.D.N.Y. 2021); *Kennedy v. Mondelez Global LLC*, No. 19-cv-302-ENV-SJB, 2020 WL 4006197, *4-5 (E.D.N.Y. Jul. 10, 2020); *Suarez v. California Natural Living, Inc.*, 17 CV 9847 (VB), 2019 WL 1046662,*4 (S.D.N.Y. Mar. 5, 2019). Here, Plaintiffs allege they now know the Product's amount of fat per serving, which is disclosed on the Product's packaging. (*See* Dkt. 1, ¶¶ 6-7; Butera Decl., Ex. 1.) They have no Article III standing to pursue injunctive relief.

**B. The GBL Claims Fail Because Plaintiffs Do Not Allege Facts Plausibly Establishing the Product Label is False or Misleading to Reasonable Consumers.**

To assert a claim under GBL § 349 or 350, a plaintiff must allege that the defendant engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice. *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015); *Bynum v. Family Dollar Stores, Inc.*, 592 F. Supp. 3d 304, 310 (S.D.N.Y. 2022). The allegedly deceptive act or representation must be misleading to a

"reasonable consumer." *Goshen v. Mut. Life Ins. Co. of New York*, 98 N.Y.2d 314, 324, 774 N.E.2d 1190, 746 N.Y.S.2d 858 (N.Y. 2002); *Budhani v. Monster Energy Co.*, 527 F. Supp. 3d 667, 676 (S.D.N.Y. 2021). This test applies an objective standard. *Valcarcel*, 577 F. Supp. 3d at 277. The plaintiff must do more than plausibly allege that a label might conceivably be misunderstood by some few customers. *Id.* at 278. Instead, the plaintiff must plausibly allege that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled. *Id.*; *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 242 (S.D.N.Y. 2020).

In applying the reasonable consumer standard, "context is crucial." *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013). The court must "consider the challenged advertisement as a whole, including disclaimers and qualifying language." *Mantikas v. Kellogg Company*, 910 F.3d 633, 636 (2d Cir. 2018); *accord Freeman v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995) (when applying reasonable consumer standard, the court considers "the promotion as a whole"); *Boswell v. Bimbo Bakeries USA, Inc.*, 570 F. Supp. 3d 89, 94 (S.D.N.Y. 2021). Furthermore, "there can be no section 349(a) claim when the allegedly deceptive practice was fully disclosed[.]" *Broder v. MBNA Corp.*, 281 A.D.2d 369, 371, 722 N.Y.S.2d 524 (1st Dep't 2011). It is "well stated that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fink*, 714 F.3d at 741; *accord Bynum*, 592 F. Supp. 3d at 310.

Under these standards, Plaintiffs have failed to allege facts plausibly establishing that the labeling of the Product they allegedly purchased would mislead a significant portion of consumers, acting reasonably under the circumstances. First, in the context of this Product and its packaging, the "Lean" in "Lean Bar" refers not to the bar's fat content per serving but rather to a *lifestyle* that

promotes a *lean person*—i.e., the GNC Total Lean® plan. The packaging explains that the GNC Total Lean® plan is a "simple plan for *living leaner*" that incorporates meal replacements, a meal and exercise plan, energy and metabolism support, cleansing and detox, vitamins, and on-the-go snacks, and that consumers can customize the plan by visiting www.totallean.com. (*See* Butera Decl., Ex. 1, emphasis added.) In this context, Plaintiffs allege no factual content plausibly establishing that a significant portion of reasonable consumers would interpret "Lean Bar" as a representation that the bar contains less than some specific amount of total fat. Plaintiffs' suggestion in the Complaint that consumers would interpret "Lean Bar" to mean the bar contains less than 10 g of total fat per 100 g is a "conclusory statement[] that the Court is not required to accept as true." *Bynum*, 592 F. Supp. 3d at 312 (citing *Iqbal*, 556 U.S. at 678); *accord Dashnau v. Unilever Manufacturing (US), Inc.*, 529 F. Supp. 3d 235, 242 (S.D.N.Y. 2021). Plaintiffs provide no basis "to substantiate [their] assertion that reasonable consumers would interpret the product's label" in that highly-specific way. *Bynum*, 592 F. Supp. 2d at 312.

Second, even assuming that the meaning of "Lean Bar" were ambiguous—i.e., that it could be interpreted as a reference to either a lifestyle (e.g., living lean) or a fat content claim, Plaintiffs fail to state any GBL claim because any such "ambiguity is resolved by reference to the . . . Nutrition Facts panel." *Boswell*, 570 F. Supp. 3d at 94. As noted, courts consider the promotion as a whole, including disclaimers and qualifying language. *Freeman,* 68 F.3d at 290; *Boswell*, 570 F. Supp. 3d at 94. It is indisputable that the Nutrition Facts panel on the Product the Plaintiffs allegedly purchased expressly states the Product contains 6 g of total fat per 50 g serving. (Butera Decl., Ex. 1.) Courts have repeatedly held that if a front label is ambiguous, reasonable consumers would not be misled where the ambiguity is cured by the Nutrition Facts panel or ingredient list, "in exactly the spot consumers are trained to look." *Melendez v. ONE Brands, LLC*, No. 18-CV-

06650 (CBA), 2020 WL 1283793, *7 (E.D.N.Y. Mar. 16, 2020) (granting motion to dismiss, holding that "any ambiguity created by the front label regarding the bars' carbohydrate and caloric contents is readily clarified by the back panel of the bars' packaging, which lists the amount of carbohydrates and calories in each bar"); *accord Bynum*, 592 F. Supp. 3d at 311 ("a reasonable consumer would read the ingredient list to clarify his or her understanding of the label"); *Boswell*, 570 F. Supp. 3d at 96 (where the label was ambiguous, "reasonable consumers would need additional information" and "would know exactly where to look to investigate"); *Warren v. Whole Foods Mkt. Grp., Inc.*, No. 19CV6448, 2021 WL 5759702, *6 (E.D.N.Y. Dec. 3, 2021)(holding that even where there are multiple readings of an ambiguous term on a package label, "the ingredient list would set plaintiffs straight").

Third, the Complaint ignores yet another ambiguity: even assuming consumers would interpret the "Lean Bar" as saying something about the bar's fat content, Plaintiffs fail to allege any facts plausibly establishing that reasonable consumers have any particular or common understanding as to *how many* fat grams are supposedly implied by "lean" with respect to this Product, let alone that the Product's fat content exceeds any such amount. The Complaint's *only* suggested notion of any fat-grams threshold for "lean" is Plaintiffs' allegation that 21 C.F.R. § 101.62(e)(1) and (3) define "lean" as less than 10 g of total fat, 4.5 g or less saturated fat, and less than 95 mg cholesterol per reference amount customarily consumed and per 100 g. But as explained, that definition of "lean" applies to seafood products, game meat products, "meal products," and "main dish products." *See* Section II, *supra*. It is beyond dispute the Product is none of those things. *Id.* Furthermore, this case is not about "conformity with this or that standard (which is left to authorities to regulate) but whether the marketing presentation was deceptive." *Steele v. Wegmans Food Markets, Inc.*, 472 F.Supp.3d 47, 50 (S.D.N.Y. 2020); *accord Dashnau*, 529

F.Supp.3d at 243 ("Plaintiffs' citation to various federal regulations do not establish that a reasonable consumer is likely to be misled by the words 'vanilla bean ice cream' on the Product's front label."); *Pichardo v. Only What You Need, Inc.*, No. 20-CV493 (VEC), 2020 WL 6323775, *3 n.6 (S.D.N.Y. Oct. 27, 2020) (same). Not only does the Complaint cite a regulatory definition of "lean" (i.e., less than 10 g per 100 g) that does not even apply to the Product, the Complaint does not contain any factual allegations establishing that reasonable consumers "are aware of these complex regulations, much less that they incorporate the regulations into their day-to-day marketplace expectations." *Bynum*, 592 F. Supp. 3d 304; *Dashnau*, 529 F. Supp. 3d at 242-43; *see also North American Olive Oil Ass'n v. Kangadis Food Inc.*, 962 F. Supp. 2d 514, 519 (S.D.N.Y. 2013)(plaintiff presented nothing to establish "that the perceptions of ordinary consumers align with these various [FDA] labeling standards").

For all these reasons, Plaintiffs have failed to plead factual content "that pushes [their] complaint across the line from possible to plausible." *Bynum*, 592 F. Supp. 3d at 313 (citing *Iqbal*, 556 U.S. at 680). Plaintiffs' allegations *at best* plead that "Lean Bar" is ambiguous. The clear Nutrition Facts panel on the back of the packaging makes plain how much fat the bars contain, "thereby dispelling any potential that the packaging could mislead a reasonable consumer[.]" *Id.* at 313. Plaintiffs have failed to state a claim under GBL sections 349 or 350.

## C. The Breach of Express Warranty Claim Fails for the Same Reasons as the GBL Claims.

Plaintiffs' breach of express warranty claims are based on the same theory as the GBL claims—i.e., that the label is misleading as to fat content. As already explained, the Complaint fails to plead facts plausibly establishing the label is misleading. Therefore, the express warranty claims fail for the same reasons as the GBL claims. *See, e.g., Garadi v. Mars Wrigley*

*Confectionary U.S., LLC*, No. 1:19-cv-03209 (RJD), 2021 WL 2843137, *4 (E.D.N.Y. July 6, 2021); *Cosgrove v. Blue Diamond Growers,* No. 19 Civ. 8993, 2020 WL 7211218, *3 (S.D.N.Y. Dec. 7, 2020).

### D.  The Breach of Implied Warranty Claim Fails as a Matter of Law.

Plaintiffs do not allege facts plausibly establishing any breach of the implied warranty of merchantability. "The implied warranty of merchantability is a guarantee by the seller that its goods are fit for the intended purpose for which they are used." *Tears v. Boston Scientific Corp.*, 344 F. Supp. 3d 500, 513 (S.D.N.Y. 2018). The implied warranty of merchantability "'requires only that the goods sold be of a minimal level of quality,' so that they are 'fit for the ordinary purposes for which such goods are used.'" *Brumfield v. Trader Joe's Co.*, 17 Civ. 3239 (LGS), 2018 WL 4168956, *3 (S.D.N.Y. Aug. 30, 2018) (quoting *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 433 (2d Cir. 2013)). "Where the sale of a food or beverage is concerned, courts have ruled that the product need only be fit for human consumption to be of merchantable quality." *Silva v. Smucker Natural Foods, Inc.*, No. 14-CV-6154 (JG), 2015 WL 5360022, *11 (E.D.N.Y. Sep. 14, 2015) (citing cases); *accord Howze v. Mondelez Global LLC*, No. 22-CV-351 (JLS), 2023 WL 122307, *5 (W.D.N.Y. 2023)("Plaintiff fails to allege that Lorna Doone cookies are not of merchantable quality, i.e., that they are unfit to eat."); *Leonard v. Mondelez Global LLC*, No. 21-cv-10102-PAC, 2023 WL 2403259, *6 (S.D.N.Y. Mar. 8, 2023)("[N]othing in the Complaint even remotely suggests that the Product is unfit for consumption."); *Dashnau*, 529 F. Supp. 3d at 249; *Barreto v. Westbrae Natural, Inc.*, 518 F. Supp. 3d 795, 807 (S.D.N.Y. 2021).

Plaintiffs do not allege the Product is unfit for human consumption. The implied warranty claims fail as a matter of law. *See Dashnau,* 529 F. Supp. 3d at 249; *Barretto*, 518 F. Supp. 3d at 807.

**E. The Court Does Not Have Personal Jurisdiction Over GNC with Respect to Claims of Out-of-State Putative Class Members.**

Plaintiffs assert the express warranty and implied warranty claims on behalf of a nationwide class or, alternatively, a New York subclass. Plaintiffs cannot pursue these claims on behalf of a nationwide class because the Court does not have personal jurisdiction over GNC with respect to out-of-state purchasers.

Plaintiffs bear the burden to make a prima facie showing that personal jurisdiction exists over GNC with respect to the claims of out-of-state class members. *Charles Schwab*, 883 F.3d at 81. To make that showing, Plaintiffs must allege sufficient facts to establish that there is a basis for jurisdiction under the law of the forum State, and that the exercise of personal jurisdiction comports with due process. *Id.* at 82; *Smith v. Apple, Inc.*, 583 F. Supp. 3d 554, 564 (S.D.N.Y. 2022).

The Due Process Clause requires that the defendant have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 169 (2d Cir. 2013). The minimum contacts analysis has three steps: (1) the defendant must have purposely availed itself of the privilege of conducting activities within the forum State or have purposefully directed its conduct into the forum State; (2) the claims must arise out of or relate to the defendant's forum conduct; and (3) the court must determine that jurisdiction is reasonable under the circumstances. *U.S. Bank Nat'l Assoc. v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019); *Smith*, 583 F. Supp. 3d at 564.

GNC does not challenge personal jurisdiction with respect to Plaintiffs' individual claims. But this Court does not have jurisdiction over GNC with respect to the claims of out-of-state

putative class members. *Compare Bristol-Myers Squibb v. Superior Court*, 137 S. Ct. 1773, 1781, 1783 (2017).

In *Bristol-Myers Squibb*, a group of 678 plaintiffs filed a mass action for injuries caused by one of Bristol-Myers Squibb's drugs, Plavix. *Id.* at 1778. Only 86 of the plaintiffs were California residents. *Id.* The other 592 plaintiffs were residents of other States and had not suffered their injuries in California. *Id.* The Supreme Court held that without an actual connection between the out-of-state plaintiffs' claims and the defendant's activities in California, the California state court's exercise of personal jurisdiction over Bristol-Myers Squibb with respect to the non-California plaintiffs' claims would violate the Due Process Clause of the Fourteenth Amendment. *Id.* at 1781, 1783.

The Second Circuit has not yet addressed *Bristol-Myers'* application to class actions. But since *Bristol-Myers Squibb*, courts have generally taken one of three approaches with respect to claims of out-of-state putative class members. *Carpenter v. PetSmart, Inc.*, 441 F. Supp. 3d 1028, 1034 (S.D. Cal. 2020) (describing the three approaches). First, many courts have held (incorrectly) that *Bristol-Myers Squibb* does not apply outside the context of mass tort cases. *See, e.g., Mussat v. IQVIA, Inc.*, 953 F.3d 441, 447 (7th Cir. 2020); *Boger v. Citrix Systems, Inc.*, No. 8:19-cv-01234-PX, 2020 WL 1033566, at *8 (D. Md. Mar. 3, 2020). Second, a minority of courts has held (correctly) the opposite: the same due process concerns animating *Bristol-Myers Squibb* apply to nationwide class actions in federal court, and there is no principled way to distinguish between the requirements of the Fourteenth Amendment Due Process Clause and the Fifth Amendment Due Process Clause. *See, e.g., Stacker v. Intellisource, LLC*, No. 20-2581-JWB, 2021 WL 2646444, at *10-11 (D. Kan. June 28, 2021); *Carpenter*, 441 F. Supp .3d at 1034. A third set of courts has deferred this issue until the class certification stage, taking the view it would be

premature for a court to decide whether there is specific jurisdiction over the defendant with respect to putative class member claims. *See, e.g., Molock v. Whole Foods Market, Inc.*, 952 F.3d 293, 295 (D.C. Cir. 2020).

As the Second Circuit has not addressed the issue, this Court should conduct its own constitutional analysis and dismiss the claims of out-of-state absent class members. That is what the court did in *Stacker*, 2021 WL 2646444, when it struck the plaintiff's claims on behalf of non-Kansas putative class members for lack of personal jurisdiction. In *Stacker*, the named plaintiff was a Kansas citizen attempting to bring Fair Credit Reporting Act claims on behalf of a nationwide class. *Id.* at *1. The defendant was a Colorado company. *Id.* at *1, 3. Like here, the court did not have general jurisdiction over the defendant. The defendant moved to dismiss the nationwide class allegations on the ground the court lacked specific jurisdiction with respect to non-Kansas class members. *Id.* at *3. The court agreed and struck the nationwide class allegations. *Id.* at *10-11.

The *Stacker* court recognized "the majority of district courts and two circuit courts have held that *Bristol-Myers* does not apply outside of mass tort cases." *Id.* at *8. But the court conducted its own constitutional analysis and held that "[w]hile there are differences between *Bristol-Myers'* mass action and a Rule 23 nationwide class action, the court agrees that the due process concerns recognized in *Bristol-Myers* and other Supreme Court precedent would foreclose a nationwide action that is not limited to a nonresident defendant's conduct in the forum state." *Id.* at *8. The court observed:

> Here, Plaintiff is not arguing that a Colorado employee could bring a suit in this forum [Kansas] against this Colorado company for actions relating to an employment decision in Colorado. But, what Plaintiff is in effect arguing, is that the same Colorado employee could be a member of the putative class and that would not violate Defendant's due process rights. Why is that? Simply because, as Plaintiff argues and other courts have found, a court only looks to the named

plaintiff in determining whether a court has personal jurisdiction over a defendant. This reasoning is based on the argument that a class member is determined to be a party for only some purposes and that subject matter jurisdiction is determined by allegations pertaining to the named representatives. While these statements regarding the law are accurate, they do not carry the day in convincing the court that a defendant's due process rights are set aside in a class action. *See Walden v. Fiore*, 571 U.S. 277, 284 (2014) ("Due process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties.").

*Id.* at *9.

The *Stacker* court observed the requirement of personal jurisdiction comes from the Due Process Clause's protection of the *defendant's* "personal liberty interest, and . . . represents a restriction on judicial power . . . as a matter of individual liberty." *Id.* at *9 (quotation omitted). The court distinguished between subject matter jurisdiction (a creature of statute) and personal jurisdiction over a defendant, a constitutional requirement Congress has not chosen to modify. *Id.* at *10. The court concluded:

> Supreme Court precedent does not suggest "that a particular quantum of local activity should give a State authority over a far larger quantum of activity having no connection to any in-state activity." *Daimler*, 571 U.S. at 139 n.20 (internal quotations omitted). This principle was directly addressed by *Bristol-Myers*. Moreover, the primary concern in determining personal jurisdiction is the "burden on the defendant." *Bristol-Myers*, 137 S. Ct. at 1780 (quoting *World-Wide Volkswagen*, 444 U.S. at 292). "Assessing this burden obviously requires a court to consider the practical problems resulting from litigating in the forum, but it also encompasses the more abstract matter of submitting to the coercive power of a State that may have little legitimate interest in the claims in question." *Id.* . . . A defendant should not be required to litigate claims that have no connection to this state solely because the claims are those of unnamed class members. The fact that these claims involve common questions of fact and law and could be certified as a class action under Rule 23 do not make Defendant's due process rights "vanish." [Citation omitted.]

*Id.* at *10; *see also Renne v. Nextera Energy, Inc.*, No. 5:21-cv-04032-HLT-ADM, 2022 WL 2918123, at *11 (D. Kan. July 25, 2022) (plaintiff failed to establish personal jurisdiction over the defendant with respect to nationwide class claims); *Carpenter*, 441 F. Supp. 3d at 1034.

17

In his dissent in *Molock v. Whole Foods Market Group, Inc.*, 952 F.3d 293 (D.C. Cir. 2020), Judge Silberman observed that the cases finding *Bristol-Myers*' reasoning inapplicable to class actions do so by wrongly focusing on the "party status" of absent class members, rather than on the *claims* the plaintiff asserts against the defendant. *Id.* at 307. Judge Silberman explained:

> [F]or the question at hand, the party status of absent class members seems to me to be irrelevant. The Court's focus in *Bristol-Myers* was on whether limits on personal jurisdiction protect a defendant from out-of-state *claims*, *see* 137 S. Ct. at 1781, and a defendant is subject to such claims in a nationwide class action as well. A court's assertion of jurisdiction over a defendant exposes it to that court's coercive power, so such an assertion must comport with due process of law. [Citation.] A court that adjudicates claims asserted on behalf of others in a class action exercises coercive power over a defendant just as much as when it adjudicates claims of named plaintiffs in a mass action. After all, the goal of a nationwide class action is "a binding judgment over the defendant as to the claims of the entire nationwide class—and the deprivation of the defendant's property accordingly." 2 William B. Rubenstein, Newberg on Class Actions § 6.26 (5th ed. 2019).

952 F.3d at 307 (Silberman, J., dissenting).

Here, too, the goal of Plaintiffs' nationwide class allegations is to obtain a binding judgment against Defendant as to the claims of the nationwide class, and to deprive Defendant's property rights accordingly. But personal jurisdiction must arise out of the contacts that the defendant itself creates with the forum state. *Walden v. Fiore*, 571 U.S. 277, 284 (2014); *U.S. Bank*, 916 F.3d at 150. The Complaint does not allege any facts establishing that the express and implied warranty claims of out-of-state purchasers arose from any contact between GNC and New York. The Court should dismiss all such claims. GNC should not be subjected to the burdens and expense of discovery and litigation concerning claims over which the Court does not and will not have jurisdiction.

/ / /

/ / /

V.      **CONCLUSION**

For the foregoing reasons, GNC requests that the Court grant the Motion to Dismiss in its entirety.

Respectfully submitted,

AMIN TALATI WASSERMAN, LLP

By: */s/ William P. Cole*
William P. Cole (pro hac vice)
Matthew R. Orr (pro hac vice)
515 South Flower Street, 18th Floor
Los Angeles, CA 90071
Telephone: (213) 933-2330
Facsimile: (312) 884-7352
william@amintalati.com
matt@amintalati.com

*Attorneys for Defendant GNC Holdings, LLC*

## <u>CERTIFICATE OF SERVICE</u>
(United States District Court)

      I hereby certify that on April 19, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                             */s/ William P. Cole*
                                           William P. Cole

## <u>SERVICE LIST</u>
*Mercado v. GNC HOLDINGS, LLC*
United States District Court, Southern District of New York
Civil Action No. 1:23-CV-01572-JSR

**BURSOR & FISHER, P.A.**
Frederick J. Klorczyk III
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: fklorczyk@bursor.com

**BURSOR & FISHER, P.A.**
Brittany S. Scott
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: bscott@bursor.com

**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
Nick Suciu III
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Telephone: (313) 303-3472
E-Mail: nicksuciu@milberg.com

**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
Gary M. Klinger
227 W. Monroe Street, Suite 2100

Chicago, IL 60606
Phone: 866.252.0878
Email: gklinger@milberg.com

*Counsel for Plaintiff*
*Via ECF*